## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**WALLACE WORMACK**
916 Bardswell Road
Catonsville, Maryland 21228

And

**LAKEISHA JONES**
916 Bardswell Road
Catonsville, Maryland 21228

And

**CAROLYN MARSHALL**
916 Bardswell Road
Catonsville, Maryland 21228

          **Plaintiffs,**

v.

**CBAC GAMING, LLC**
C/O Corporation Service Company, Ste 400
2711 Centerville Road
Wilmington, Delaware 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

And

**CBAC BORROWER, LLC**
C/O Corporation Service Company, Ste 400
2711 Centerville Road
Wilmington, Delaware 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820

Civ. No. _____



Baltimore, Maryland 21202

**And**

**CVPR GAMING HOLDINGS, LLC**
1 Olympic Place, Suite 1210
Towson, Maryland 21204

**Serve:**

Craig H. Colton
1 Olympic Place, Suite 1210
Towson, Maryland 21204

**And**

**PRT TWO, LLC**
1201 North Calvert Street
Baltimore, Maryland 21202

**Serve:**

Cecil E. Flamer
1201 North Calvert Street
Baltimore, Maryland 21202

**And**

**CAESARS ENTERTAINMENT, INC.**
1 Caesars Palace Drive
Las Vegas, Nevada 89109

**Serve:**

Corporation Service Company
112 North Curry Street
Carson City, Nevada 89703

**And**

**CBAC HOLDING COMPANY, LLC**
C/O Corporation Service Company, Ste 400
2711 Centerville Road
Wilmington, Delaware 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**And**

**CAESARS BALTIMORE
MANAGEMENT COMPANY, LLC**
C/O Corporation Service Company, Ste 400
2711 Centerville Road
Wilmington, Delaware 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**And**

**CAESARS BALTIMORE
INVESTMENT COMPANY, LLC**
C/O Corporation Service Company, Ste 400
2711 Centerville Road
Wilmington, Delaware 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**And**

**CAESARS ENTERPRISE SERVICES,
LLC**
One Caesars Palace Drive
Las Vegas, Nevada 89109

**Serve:**

CSC-Lawyers Incorporating Service

Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**And**

**CAESARS LICENSE COMPANY, LLC
d/b/a HORSESHOE BALTIMORE
CASINO**
One Caesars Palace Drive
Las Vegas, Nevada 89109

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**And**

**STRON-MD LIMITED PARTNERSHIP**
Address Unknown

**Serve:**

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**And**

**ROCK GAMING, LLC**
Address Unknown

**Serve:**

United Agent Group, Inc.
3411 Silverside Road
Tatnall Building, #104
Wilmington, DE 19810

**And**

**JACK ENTERTAINMENT, LLC**
1 Woodward Avenue, Suite 1100
Detroit, MI 48226

**Serve:**

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**And**

**JACK ENTERTAINMENT IP, LLC**
Address Unknown

**Serve:**

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**And**

**CR BALTIMORE HOLDINGS, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

**Serve:**

CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202

**Defendants.**

---

## COMPLAINT

COME NOW the Plaintiffs, Wallace Wormack, Lakeisha Jones, and Carolyn Marshall,

by and through their attorneys, Ronald A. Karp, Esq., Demosthenes Komis, Esq., Zachary King,

Esq., of the law firm of Karp, Wigodsky, Norwind, Kudel & Gold, P.A., and state the following causes of action against Defendants CBAC Gaming, LLC, CBAC Borrower, LLC, CVPR Gaming Holdings, LLC, PRT Two, LLC, Caesars Entertainment, Inc., CBAC Holding Company, LLC, Caesars Baltimore Management Company, LLC, Caesars Baltimore Investment Company, LLC, Caesars Enterprise Services, LLC, Caesars License Company, LLC d/b/a Horseshoe Baltimore Casino, STRON-MD Limited Partnership, Rock Gaming, LLC, Jack Entertainment, LLC, Jack Entertainment IP, LLC and CR Baltimore Holdings, LLC:

<u>**JURISDICTION, PARTIES and FACTUAL BACKGROUND**</u>

1.     This cause of action arose on March 3, 2019 at approximately 2:30 a.m., when Wallace Wormack, his wife Lakeisha Jones, and his mother-in-law Carolyn Marshall (hereinafter collectively referred to as "Plaintiffs") were accosted and subjected to an unprovoked physical attack (hereinafter refer to as "the attack") while they were walking back to their vehicle in the parking garage of the Caesar's Horseshoe Baltimore Casino in Baltimore, Maryland after having spent time in the Caesar's Horseshoe Baltimore Casino as customers.

2.     Plaintiff Wallace Wormack, an adult, is a resident of Catonsville, Maryland.

3.     Plaintiff Lakeisha Jones, an adult, is a resident of Catonsville, Maryland.

4.     At all relevant times, Mr. Wormack and Ms. Jones were and remain married.

5.     Plaintiff Carolyn Marshall, an adult, is a resident of Catonsville, Maryland.  Ms. Marshall is the mother of Plaintiff Lakeisha Jones.

6.     Upon information and belief, Defendants CBAC Gaming, LLC, CBAC Borrower, LLC, CBAC Holding Company, LLC, Caesars Baltimore Management Company, LLC, Caesars Baltimore Investment Company, LLC, were, at all material times, corporations organized and

existing under the laws of the State of Delaware with their principal place of business in Wilmington, Delaware.

7.    Upon information and belief, Defendants Caesars Enterprise Services, LLC, Caesars Entertainment, Inc. and Caesars License Company, LLC d/b/a Horseshoe Baltimore Casino were, at all material times, corporations organized and existing under the laws of the State of Nevada with their principal place of business in Las Vegas, Nevada.

8.    Upon information and belief, Defendants CVPR Gaming Holdings, LLC and PRT Two, LLC were, at all material times, corporations organized and existing under the laws of the State of Maryland with their principal places of business in Towson and Baltimore, Maryland, respectively.

9.    Upon information and belief, Defendant STRON-MD Limited Partnership was, at all material times, an entity organized and existing under the laws of the State of Delaware.

10.    Upon information and belief, Defendant Rock Gaming, LLC was, at all material times, a company organized and existing under the laws of the State of Delaware.

11.    Upon information and belief, Defendant Jack Entertainment, LLC was, at all material times, a company organized and existing under the laws of the State of Delaware with its principal office in Detroit, Michigan.

12.    Upon information and belief, Defendant Jack Entertainment IP, LLC was, at all material times, a company organized and existing under the laws of the State of Delaware.

13.    Upon information and belief, Defendant CR Baltimore Holdings, LLC was, at all material times, a company organized and existing under the laws of the State of Delaware with its principal office in Wilmington, Delaware.

14.     Upon further information and belief, at all relevant times, all of the defendants named in this Complaint (hereinafter referred to as "the defendants") owned, operated, and managed Caesar's Horseshoe Baltimore Casino, which included the parking garage where the attack that is the subject of this action took place (hereinafter referred to as "the parking garage").

15.     Upon information and belief, at all relevant times, the defendants employed uniformed security guards to provide security for the casino and the parking garage.

16.     Upon information and belief, at all relevant times, the defendants were responsible for providing security for the casino and the parking garage.

17.     This Court has jurisdiction over the defendants as the defendants transact business in the State of Maryland and caused tortious injuries to Plaintiffs by acts or omissions in the State of Maryland.

18.     Venue is proper in the Circuit Court for Baltimore City, Maryland as this cause of action arose in Baltimore City, Maryland and defendants carry on a regular business in Baltimore City, Maryland.

19.     At all relevant times, the Caesar's Horseshoe Baltimore Casino, located at 1525 Russell Street, Baltimore, Maryland 21230 (hereafter the "casino") was connected to a six-level parking garage, where patrons of the casino park their vehicles.

20.     The second floor of the parking garage was reserved for employee parking, and the third floor was for casino club members.  Non-club members parked on the fourth, fifth, and sixth floors of the garage.

21.     At all relevant times, the third floor of the garage was closed to patrons and casino patrons had to park on parking levels 4-6 of the garage.

22.    At all relevant times, there was no charge to enter the parking garage and park; it was designated as free parking for the casino.

23.    At all relevant times, a person could enter the garage and park without encountering security at the entrance to the parking garage or passing through any security gates.

24.    Upon information and belief, at all relevant times, the defendants had employed security personnel to provide security for the casino.

25.    At approximately 2:30 a.m. on March 3, 2019, Plaintiffs were walking to their vehicle on the fifth floor of the garage, when a vehicle occupied by Kilil Goodman, Jordan Waters, and Sequoia Brooks, slowed and stopped momentarily next to Plaintiffs.

26.    As the vehicle came to a stop, Ms. Brooks asked Plaintiffs whether they had a light for a cigarette.  When Plaintiffs responded that they did not, the occupants of the vehicle swore at them and then began driving towards the garage elevators in the opposite direction from Plaintiffs.

27.    As Plaintiffs proceeded to walk in the opposite direction, the vehicle containing Messrs. Goodman and Waters and Ms. Brooks stopped near the elevators.  Mr. Goodman and Ms. Brooks exited the vehicle, left the vehicle in the middle of the aisle with the car doors open, and began to walk in the direction of Plaintiffs while yelling expletives and threatening Plaintiffs.  Mr. Goodman was also clapping his hands loudly as he was walking.  After a moment, Mr. Waters also left the vehicle and headed in the direction of Plaintiffs.

28.    There were no security personnel present in the area where Mr. Goodman and Ms. Brooks were walking and yelling expletives and threatening Plaintiffs at the time that Mr. Goodman and Ms. Brooks were walking towards Plaintiffs.

29.    None of the defendants' security personnel confronted Mr. Goodman and Ms. Brooks as they walked through the parking garage yelling expletives and threatening Plaintiffs prior to the attack.

30.    Mr. Goodman and Ms. Brooks eventually caught up with Plaintiffs and confronted them while yelling and cursing at them.

31.    None of the defendants' security personnel confronted Mr. Goodman and Ms. Brooks as they confronted and threatened the Plaintiffs.

32.    Mr. Goodman then physically attacked Ms. Jones and Ms. Marshall and then attacked Mr. Wormack when he tried to protect his wife and mother-in-law.

33.    Mr. Waters then arrived and joined the attack on Mr. Wormack, knocking Mr. Wormack to the ground where he briefly lost consciousness. Mr. Wormack was struck in the face and when he fell his head hit the concrete floor of the garage.

34.    During the attack, there were no security personnel present in the area of the attack.

35.    During the attack, there were no security personnel present on the level of the parking garage where the attack was taking place.

36.    Surveillance cameras within the parking garage had captured the entirety of the approximately three-minute encounter between Plaintiffs and Goodman, Waters and Brooks.

37.    Security personnel eventually arrived at the location of the attack and subsequently took Mr. Goodman and Mr. Waters into custody.

38.    Mr. Goodman was charged with three counts of assault in the second degree. He pled guilty and received a probation after conviction, with two years of supervised probation.

39.     Mr. Waters was charged with one count of assault in the first degree, one count of

assault in the second degree, and affray.    He pled guilty and received a probation after

conviction, with two years of supervised probation.

40.     At the time of the altercation, there was a steady flow of vehicles driving in the

parking garage and there were individuals walking to and from their vehicles.

41.     Prior to the attack, numerous violent crimes had taken place in the casino and

parking garage.

### COUNT I
#### (Negligence as to Wallace Wormack)

42.     Plaintiff Wallace Wormack re-alleges and incorporates by reference herein

paragraphs 1 through 41 of this Complaint.

43.     At all relevant times, Mr. Wormack was an invitee of the casino and of the

defendants and was lawfully on the casino's premises.

44.     At all relevant times, the defendants, as owners and operators of the casino, owed

a non-delegable duty to Mr. Wormack, their invitee, to use reasonable and ordinary care to keep

the premises in a safe condition and to protect him against foreseeable and imminent dangers of

which the defendants were aware of, or which, through the exercise of reasonable care, could

have been discovered.    This duty owed by the defendants included the duty to protect Mr.

Wormack from imminent and foreseeable harm caused by a third party.

45.     The defendants had actual or constructive notice that Mr. Wormack was at an

unreasonable risk of injury while on their premises.

46.     The defendants knew, or should have known, that Mr. Wormack was endangered

in the parking garage.

47.     The defendants knew, or should have known, of the foreseeable and imminent danger posed by Messrs. Goodman and Waters based upon the history of prior criminal activity in and around the casino and the casino parking garage.

48.     The defendants also knew, or should have known, of the imminent and foreseeable danger posed by Messrs. Goodman and Waters to Mr. Wormack based upon the conduct of Messrs. Goodman and Waters upon entering the parking garage, which included yelling at and accosting casino patrons and threatening them with violence.

49.     The defendants had a duty to protect Mr. Wormack from the criminal conduct of Messrs. Goodman and Waters because the defendants were, or should have been, aware of the conduct of Messrs. Goodman and Waters upon entering the parking garage and the prior history of violent criminal activity in and around the casino and casino parking garage.

50.     Given the prior crimes committed on the premises, including in the casino and its parking garage, the defendants had a duty to provide sufficient deterrence to violent criminal activity. The duty to provide safety and security, included, but was not limited to, deterrence, surveillance, and active, responsive security.

51.     The defendants breached their non-delegable duty of safety to protect Mr. Wormack, an invitee on their property, from harm caused by Messrs. Goodman and Waters by:

      a.     Failing to provide adequate security for invitees, such as Plaintiffs, at the casino;

      b.     Failing to adequately staff the casino parking garage with security guards;

      c.     Failing to have any security personnel on the level of the parking garage where the attack took place;

d.      Failing to alert its security employees about the suspicious and criminal conduct of Messrs. Goodman and Waters in the parking garage;

e.      Failing to inform its security employees to be on the lookout for Messrs. Goodman and Waters based upon their conduct in the parking garage;

f.      Failing to provide a description of Messrs. Goodman and Waters and/or their vehicle to all security employees;

g.      Failing to provide adequate visible security deterrents in the parking garage;

h.      Failing to have security vehicles patrolling the parking garage level where the attack took place;

i.      Failing to actively monitor video surveillance of the parking garage and to respond promptly to dangerous and suspicious activity observed on the surveillance;

j.      Failing to set up rings of protection that would have been able to identify Messrs. Goodman and Waters and/or their vehicle when they entered the premises;

k.      Failing to provide an atmosphere of deterrence;

l.      Failing to provide a visible security deterrence such that the assailants would have been deterred from attacking Plaintiffs;

m.      Failing to take reasonable steps to protect the safety of their invitees, such as Plaintiffs, including but not limited to, detecting the presence of Messrs. Goodman and Waters, deterring them from committing violent and criminal acts, and preventing them from causing harm to invitees;

n.    Failing to coordinate security at the casino with their security employees.
The defendants were negligent in other ways.

52.    As a direct and proximate result of the negligence of the defendants, Mr. Wormack sustained a crushed occipital orbit, broken nose, and traumatic brain injury with cognitive deficits and seizures. He required surgery including the installation of a titanium plate in his face. He has symptoms including but not limited to cognitive impairment, neck pain, cervical nerve damage, migraines, blurred vision, post-traumatic stress disorder, back pain, dizziness, nausea, numbness in the arms and legs, and hip pain. He has incurred and will in the future incur medical, hospital, therapy, and other expenses for the care and treatment of his injuries. He has suffered, and will in the future suffer pain and permanent disability. He has lost, and will in the future lose income, and he has suffered a permanent impairment of his future earning capacity. Mr. Wormack has been damaged in other ways.

<u>**COUNT II**</u>
**(Negligence as to Lakeisha Jones)**

53.    Plaintiff Lakeisha Jones re-alleges and incorporates by reference herein paragraphs 1 through 52 of this Complaint.

54.    At all relevant times, Ms. Jones was an invitee of the casino and of the defendants and was lawfully on the casino's premises.

55.    At all relevant times, the defendants, as owners and operators of the casino, owed a non-delegable duty to Ms. Jones, their invitee, to use reasonable and ordinary care to keep the premises in a safe condition and to protect her against foreseeable and imminent dangers of which the defendants were aware of, or which, through the exercise of reasonable care, could have been discovered. This duty owed by the defendants included the duty to protect Ms. Jones from imminent and foreseeable harm caused by a third party.

56.    The defendants had actual or constructive notice that Ms. Jones was at an unreasonable risk of injury while on their premises.

57.    The defendants knew, or should have known, that Ms. Jones was endangered in the parking garage.

58.    The defendants knew, or should have known, of the foreseeable and imminent danger posed by Messrs. Goodman and Waters based upon the history of prior criminal activity in and around the casino and the casino parking garage.

59.    The defendants also knew, or should have known, of the imminent and foreseeable danger posed by Messrs. Goodman and Waters to Ms. Jones based upon the conduct of Messrs. Goodman and Waters upon entering the parking garage, which included yelling at and accosting casino patrons and threatening them with violence.

60.    The defendants had a duty to protect Ms. Jones from the criminal conduct of Messrs. Goodman and Waters because the defendants were, or should have been, aware of the conduct of Messrs. Goodman and Waters upon entering the parking garage and the prior history of violent criminal activity in and around the casino and casino parking garage.

61.    Given the prior crimes committed on the premises, including in the casino and its parking garage, the defendants had a duty to provide sufficient deterrence to violent criminal activity. The duty to provide safety and security, included, but was not limited to, deterrence, surveillance, and active, responsive security.

62.    The defendants breached their non-delegable duty of safety to protect Ms. Jones, an invitee on their property, from harm caused by Messrs. Goodman and Waters by:

      a.    Failing to provide adequate security for invitees, such as Plaintiffs, at the casino;

b. Failing to adequately staff the casino parking garage with security guards;

c. Failing to have any security personnel on the level of the parking garage where the attack took place;

d. Failing to alert its security employees about the suspicious and criminal conduct of Messrs. Goodman and Waters in the parking garage;

e. Failing to inform its security employees to be on the lookout for Messrs. Goodman and Waters based upon their conduct in the parking garage;

f. Failing to provide a description of Messrs. Goodman and Waters and/or their vehicle to all security employees;

g. Failing to provide adequate visible security deterrents in the parking garage;

h. Failing to have security vehicles patrolling the parking garage level where the attack took place;

i. Failing to actively monitor video surveillance of the parking garage and to respond promptly to dangerous and suspicious activity observed on the surveillance;

j. Failing to set up rings of protection that would have been able to identify Messrs. Goodman and Waters and/or their vehicle when they entered the premises;

k. Failing to provide an atmosphere of deterrence;

l. Failing to provide a visible security deterrence such that the assailants would have been deterred from attacking Plaintiffs;

m.    Failing to take reasonable steps to protect the safety of their invitees, such as Plaintiffs, including but not limited to, detecting the presence of Messrs. Goodman and Waters, deterring them from committing violent and criminal acts, and preventing them from causing harm to invitees;

n.    Failing to coordinate security at the casino with their security employees.

The defendants were negligent in other ways.

63.    As a direct and proximate result of the negligence of the defendants, Ms. Jones sustained injuries of a temporary and permanent nature, including, but not limited to, lacerations to her face and left hand and a right knee injury.  She has incurred and will in the future incur medical, hospital, therapy, and other expenses for the care and treatment of her injuries.  She has suffered, and will in the future suffer pain and permanent disability.  Ms. Jones has been damaged in other ways.

<u>**COUNT III**</u>
**(Loss of Consortium as to Wallace Wormack and Lakeisha Jones)**

64.    The Plaintiffs Wallace Wormack and Lakeisha Jones re-allege and incorporate by reference herein paragraphs 1 through 63 of this Complaint.

65.    At all relevant times Mr. Wormack and Ms. Jones were and remain married and residing together at their residence in Catonsville, Maryland.

66.    As a direct and proximate result of the negligence of the defendants, and the injuries to Plaintiffs Wallace Wormack and Lakeisha Jones, the Plaintiffs Wallace Wormack and Lakeisha Jones have suffered and in the future will suffer damage to their marital relationship including loss of consortium, companionship, affection, assistance, services, and economic losses.

## COUNT IV
### (Negligence as to Carolyn Marshall)

67.    Plaintiff Carolyn Marshall re-alleges and incorporates by reference herein paragraphs 1 through 66 of this Complaint.

68.    At all relevant times, Ms. Marshall was an invitee of the casino and of the defendants and was lawfully on the casino's premises.

69.    At all relevant times, the defendants, as owners and operators of the casino, owed a non-delegable duty to Ms. Marshall, their invitee, to use reasonable and ordinary care to keep the premises in a safe condition and to protect her against foreseeable and imminent dangers of which the defendants were aware of, or which, through the exercise of reasonable care, could have been discovered.  This duty owed by the defendants included the duty to protect Ms. Marshall from imminent and foreseeable harm caused by a third party.

70.    The defendants had actual or constructive notice that Ms. Marshall was at an unreasonable risk of injury while on their premises.

71.    The defendants knew, or should have known, that Ms. Marshall was endangered in the parking garage.

72.    The defendants knew, or should have known, of the foreseeable and imminent danger posed by Messrs. Goodman and Waters based upon the history of prior criminal activity in and around the casino and the casino parking garage.

73.    The defendants also knew, or should have known, of the imminent and foreseeable danger posed by Messrs. Goodman and Waters to Ms. Marshall based upon the conduct of Messrs. Goodman and Waters upon entering the parking garage, which included yelling at and accosting casino patrons and threatening them with violence.

74.    The defendants had a duty to protect Ms. Marshall from the criminal conduct of Messrs. Goodman and Waters because the defendants were, or should have been, aware of the conduct of Messrs. Goodman and Waters upon entering the parking garage and the prior history of violent criminal activity in and around the casino and casino parking garage.

75.    Given the prior crimes committed on the premises, including in the casino and its parking garage, the defendants had a duty to provide sufficient deterrence to violent criminal activity. The duty to provide safety and security, included, but was not limited to, deterrence, surveillance, and active, responsive security.

76.    The defendants breached their non-delegable duty of safety to protect Ms. Marshall, an invitee on their property, from harm caused by Messrs. Goodman and Waters by:

    a.    Failing to provide adequate security for invitees, such as Plaintiffs, at the casino;

    b.    Failing to adequately staff the casino parking garage with security guards;

    c.    Failing to have any security personnel on the level of the parking garage where the attack took place;

    d.    Failing to alert its security employees about the suspicious and criminal conduct of Messrs. Goodman and Waters in the parking garage;

    e.    Failing to inform its security employees to be on the lookout for Messrs. Goodman and Waters based upon their conduct in the parking garage;

    f.    Failing to provide a description of Messrs. Goodman and Waters and/or their vehicle to all security employees;

    g.    Failing to provide adequate visible security deterrents in the parking garage;

h.    Failing to have security vehicles patrolling the parking garage level where the attack took place;

i.    Failing to actively monitor video surveillance of the parking garage and to respond promptly to dangerous and suspicious activity observed on the surveillance;

j.    Failing to set up rings of protection that would have been able to identify Messrs. Goodman and Waters and/or their vehicle when they entered the premises;

k.    Failing to provide an atmosphere of deterrence;

l.    Failing to provide a visible security deterrence such that the assailants would have been deterred from attacking Plaintiffs;

m.    Failing to take reasonable steps to protect the safety of their invitees, such as Plaintiffs, including but not limited to, detecting the presence of Messrs. Goodman and Waters, deterring them from committing violent and criminal acts, and preventing them from causing harm to invitees;

n.    Failing to coordinate security at the casino with their security employees.

The defendants were negligent in other ways.

77.    As a direct and proximate result of the negligence of the defendants, Ms. Marshall sustained injuries of a temporary and permanent nature, including, but not limited to, facial injuries, anxiety and depression, and an exacerbation or worsening of her preexisting migraines. She has incurred and will in the future incur medical, hospital, therapy, and other expenses for the care and treatment of her injuries. She has suffered, and will in the future suffer pain and permanent disability. Ms. Marshall has been damaged in other ways.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Wallace Wormack, Lakeisha Jones, and Carolyn Marshall jointly demand judgment against Defendants CBAC Gaming, LLC, CBAC Borrower, LLC, CVPR Gaming Holdings, LLC, PRT Two, LLC, Caesars Entertainment, Inc., CBAC Holding Company, LLC, Caesars Baltimore Management Company, LLC, Caesars Baltimore Investment Company, LLC, Caesars Enterprise Services, LLC, Caesars License Company, LLC d/b/a Horseshoe Baltimore Casino, STRON-MD Limited Partnership, Rock Gaming, LLC, Jack Entertainment, LLC, Jack Entertainment IP, LLC, and CR Baltimore Holdings, LLC, jointly and severally, for compensatory damages in an amount in excess of $75,000, plus interest and costs, and any and all other relief to which they may be entitled.

Respectfully submitted,

**KARP, WIGODSKY,**
**NORWIND, KUDEL & GOLD, P.A.**

Ronald A. Karp, Esq. - CPF# 7206010060
Demosthenes Komis, Esq. - CPF# 0612120482
Zachary W.J. King, Esq. - CPF#1006170
2273 Research Boulevard
Suite 200
Rockville, Maryland 20850
PH (301) 948-3800 | FX (301) 948-5449
*Attorneys for the Plaintiffs*

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this action.

Demosthenes Komis